498 A.2d 800

**Ernest Roth LEWIS, Appellant**

**v.**

**COMMONWEALTH of Pennsylvania, Workmen's Compensation Appeal Board, and Pittsburgh Board of Education, Appellees.**

Supreme Court of Pennsylvania.

Argued March 6, 1985.

Decided Sept. 24, 1985.

Raymond F. Keisling, Will & Keisling, Pittsburgh, for appellant.

Robert J. Stefanko, Sol., David H. Dille, Asst. Sol., Pittsburgh Board of Education, Pittsburgh, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

This is an appeal from the Commonwealth Court's affirmance of the Workmen's Compensation Appeal Board's reversal of a referee's decision awarding compensation to the appellant, 80 Pa.Cmwlth. 640, 472 A.2d 1176. The issue concerns the standard of review to be applied to a referee's determination of causation in cases where a claimant must establish a link between his medical condition and a work-related incident.

Appellant's workmen's compensation claim was based on injuries allegedly arising from a work-related incident oc-

curring while employed by the Pittsburgh Board of Education as a physical education teacher. While moving gym equipment during a scheduled in-service day in August 1979, appellant felt a sharp pain in the back of his neck. He was hospitalized five days later. Five days thereafter, he was transferred to another hospital where he was placed under the care of Dr. Narayan Nayak, a neurosurgeon. Dr. Nayak diagnosed appellant as suffering from cervical spondylosis with a root comprehension syndrome. He performed an anterior cervical discetomy and iliac graft fusion upon appellant. Appellant was absent from his job from September 4, 1979 to October 29, 1979.

At the referee's hearing, appellant testified that he first experienced problems with his neck when he sustained a football injury at college in 1966. He suffered discomfort and pain in his neck on an intermittent basis since that time. Appellant also testified that at the time of his alleged injury he was a football coach at a local parochial high school unassociated with the Pittsburgh School District.

■ In lieu of live medical testimony appellant had a deposition of Dr. Nayak admitted into evidence.[1] At the deposition claimant's counsel recited, in hypothetical terms, the appellant's medical history pertinent to his disability, including the incident at school. He then asked whether under those circumstances the neck condition was related to the incident occurring in the course of claimant's employment. Dr. Nayak answered:

Though we do not have a definite record of the injury, I assume this particular episode which you mentioned could have been directly or indirectly could have been the cause of his problem. At the time of surgery, there were extruded cartilages found which confirms this probably was an acute aggravating situation and was responsible for his root compression syndrome.

1. We do not intend to dilute the efficacy of deposition testimony, qua deposition testimony. Whether the evidence is "live" or by deposition, medical evidence must be unequivocal in its diagnosis and prognosis. See *infra,* pp. 364–368.

On cross-examination Dr. Nayak was asked to read the following from a medical report he issued to claimant's attorney:

The clinical history was suggestive of long standing ongoing process of spondylosis with root compression syndrome. As far as we know, the history of evolution of this kind of problem is chronic, persistent, mild trauma which may be aggravated by mild trauma or the normal aging process of the spine which may be aggravated by the repeated trauma.

Since this man is involved in football coaching, I believe he would be exposed to repeated trauma to the neck and could be responsible for aggravation of this problem.

Further cross-examination followed:

Q. Is it also a possibility, Doctor, that the normal aging process of the spine which you have alluded to in this particular paragraph, is it also possible that that normal aging process could have gotten progressively worse to the point where he would need this particular operation which you performed upon him?

A. Yes.

Q. Then additionally as you have already stated in the [medical report], it is also possible that when he was involved in coaching football, that the traumas that are associated with that type of activity, that could have brought about this particular result, also; is that correct?

A. Could have aggravated?

Q. The existing condition.

A. Yes, the existing condition.

On redirect claimant's counsel again attempted to elicit an unequivocal statement on the cause of appellant's disability from Dr. Nayak. The testimony was as follows:

Q. ... it is your testimony that (the work incident) would have been a cause or an aggravating factor in this series of factors which led to the surgery; is that correct?

A. ... Usually we find herniation of the disc, especially in a younger person like Mr. Ernest Lewis. This is due to an acute trauma. I have to believe if he has mentioned so, that his condition was severely aggravated after the injury which was on August 30. I have to assume without doubt in my mind that this herniated disc has come from that particular incident, but at the time of evaluation from the beginning, he has been having repeated trauma and the myelogram itself and the X-rays themselves have shown evidence of cervical spondylosis which is an on-going, slow process. The aggravation could have been caused at the time of the injury on the 30th of August, and he could have had this herniation at that time.

Q. You are saying the episode of August 30 was an aggravation of a preexisting condition?

A. And was responsible for this herniation of the disc.

The referee granted appellant benefits. The Board, however, reversed, based on its conclusion that Dr. Nayak's testimony was not sufficiently unequivocal to establish the necessary causal connection between appellant's medical condition and the work-related incident. The Commonwealth Court, 80 Pa.Cmwlth. 640, 472 A.2d 1176, reached this same conclusion and affirmed the decision of the Board. We granted allocatur, and we now affirm.

In workmen's compensation cases, the claimant has the burden of proving a causal relationship between a work-related incident and his alleged disability. *Monahan v. Seeds & Durham*, 336 Pa. 67, 6 A.2d 889 (1939); *Miller v. Springfield Township Highway Department*, 202 Pa.Super. 616, 198 A.2d 399 (1964). Where there is no obvious causal connection between an injury and the alleged cause, that connection must be established by unequivocal medical testimony. *Zander v. Workmen's Compensation Appeal Board*, 68 Pa.Cmwlth. 412, 449 A.2d 784 (1982). Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned

cause, but that in his professional opinion the result in question did come from the assigned cause. *Menarde v. Philadelphia Transportation Co.,* 376 Pa. 497, 103 A.2d 681 (1954). Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship. *Bisesi v. Workmen's Compensation Appeal Board,* 61 Pa.Cmwlth. 260, 433 A.2d 592 (1981).

While admitting that Dr. Nayak's testimony was not as clear as one would hope, appellant contends that Dr. Nayak did, at one point, unequivocally state that claimant's injuries were caused by the work related incident. He further argues that the lower court, in relying on the later equivocations of Dr. Nayak, failed to recognize the doctrine that the referee may accept or reject the testimony of any witness in whole or in part. *Harman Coal Co. v. Dunmyre,* 474 Pa. 610, 379 A.2d 533 (1977). Such an approach misconstrues the nature of the inquiry.

 In a case such as this it is the purpose and function of the reviewing board and/or appellate courts to review the conclusions of law of the referee, while at the same time ascertaining that the facts found by the referee are supported by substantial evidence. A determination that certain medical testimony is equivocal is not, as appellant assumes, a finding of fact; rather, it is a conclusion of law and as such fully reviewable. *See Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board,* 66 Pa. Cmwlth. 579, 581, 445 A.2d 843, 845 (1982). In conducting such review the medical witness's entire testimony must be reviewed and taken as a whole and a final decision "should not rest upon a few words taken out of the context of the entire testimony." *Wilkes-Barre, City v. Workmen's Compensation Appeal Board,* 54 Pa.Cmwlth. 230, 234, 420 A.2d 795, 798 (1980). Thus, the rule of *Dunmyre, supra,* which is essentially applicable to determinations of credibility, is not germane to this case where the inquiry is directed at the legal sufficiency of the evidence as a whole.

The question remains as to whether the lower tribunals correctly concluded that the evidence in this record was insufficient to sustain an award of compensation. Our review convinces us that they were correct in their conclusion that Dr. Nayak's testimony regarding the cause of appellant's maladies was too equivocal to establish the necessary causal connection between those maladies and a work-related incident.

At first, Dr. Nayak testified that the incident at school *"could have been* directly or indirectly could have been the cause"* of appellant's condition. He then read from a report he prepared in which he stated that the clinical history suggested a longstanding ongoing process of spondylosis with root compression syndrome which could have been aggravated simply through the normal aging process or through repeated trauma to the neck incurred in football coaching. Thereafter, he reaffirmed this reported opinion that the condition could have been caused by these non-work-related factors.

■ Statements that an assigned cause "could have" been the cause of the condition have repeatedly been held to be legally insufficient. *Simons v. Workmen's Compensation Appeal Board,* 52 Pa.Cmwlth. 575, 415 A.2d 1290 (1980); *McPhillips v. School District of Philadelphia,* 40 Pa. Cmwlth. 204, 396 A.2d 922 (1979); *Ricciardi v. Workmen's Compensation Appeal Board,* 34 Pa.Cmwlth. 316, 383 A.2d 571 (1978); *Mohler v. Cook,* 205 Pa.Super. 232, 209 A.2d 7 (1965). Thus, Dr. Nayak's testimony on direct examination was not unequivocal as to causation.

■ Dr. Nayak's testimony on re-direct was also legally insufficient to establish the necessary causal connection. He stated that he had to "assume" that the herniated disc resulted from the work incident since appellant mentioned that his condition was severely aggravated after the incident. A physician's assumption that an injury is caused by a recent event because of the temporal proximity is not a sufficiently competent opinion to establish a causal relation-

ship. *Bisesi, supra.* In the same breath as this assumption, Dr. Nayak again referred to "repeated trauma" and the "on-going, slow process" of spondylosis, which he earlier cited as possible causes. His vacillation continued as he again stated that the condition "could have" been caused by the work incident.

■ After these equivocal statements claimant's attorney attempted to put to the witness an unequivocal statement. He suggested: "You are saying the episode of August 30 (work incident) was an aggravation of a preexisting condition?" To which Dr. Nayak responded: "And was responsible for this herniation of the disc." Although when examined alone this statement seems unequivocal, we cannot ignore Dr. Nayak's repeated equivocal statements on the same topic. When the entire testimony is examined, the reasonable conclusion is that, on the whole, the physician's statements regarding the causal connection between the condition and the assigned cause were equivocal, and therefore were not sufficient to establish the necessary causal connection.

In summary, our review of the subject testimony reveals that it was internally inconsistent and equivocal. Under such circumstances the acceptance by the referee of selected portions of transcript borders on whim.

Accordingly, the order of the Commonwealth Court is affirmed.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

The majority prefaces its discussion of the sufficiency of the evidence with the following statements of law:

In workmen's compensation cases, the claimant has the burden of proving a causal relationship between a work-related incident and his alleged disability. ... Where there is no obvious causal connection between an injury and the alleged cause, that connection must be established by unequivocal medical testimony. ... Where

medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion, the result in qustion did come from the assigned cause. ...
Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship. ... Majority op. at —— (citations omitted; emphasis added).

The underscored portion of this quotation contains a false assumption which, in my opinion, skews the majority's review of the record for sufficiency of the evidence. That assumption, which leads the majority to search for sufficiency exclusively in the medical testimony, is that there is no obvious causal connection between appellant's injury and the alleged cause of the injury, namely the work-related incident wherein appellant experienced a sudden, sharp pain in the back of his neck while moving gym equipment weighing several hundred pounds on August 30, 1979. That pain was severe enough that appellant went to see his family physician that evening. On September 4, 1979, five days after the incident at work, appellant was hospitalized for his neck injury. On September 12, 1979, Dr. Nayak operated on appellant to correct this condition. From these facts, *as well as* the medical evidence, the referee concluded that appellant "has met his burden of proof to show that he suffered an injury[1] in the course of his employment which was related thereto." I believe this conclusion was proper in light of all the evidence.

In *Morgan v. Giant Markets, Inc.*, 483 Pa. 421, 397 A.2d 415 (1979), this Court reversed the Commonwealth Court in a similar case, wherein we stated:

The Commonwealth Court held, as a matter of law, that the above facts do not establish the causation because no

---

1. As defined by the Workmen's Compensation Act, 77 P.S. § 411(1), "injury" means "an injury to an employe, *regardless of his previous physical condition,* arising in the course of his employment and related thereto ...."

medical testimony linking the work incident and the injury had been produced. The court relied on *Montgomery Mills Co. v. Workmen's Compensation Board of Appeals*, 26 Pa.Cmwlth. 471, 364 A.2d 508 (1976) which held:

> "The long-established rule is that unequivocal medical testimony is required to establish a causal connection between an accident and a disability *only where the connection is not obvious*". (citation omitted).

In interpreting *Montgomery Mills, supra*, the court held that in the instant case the causal connection between the work incident and the injury was not obvious, and, therefore, medical testimony was needed.

We are reversing the Commonwealth Court in the instant case. *Where one is doing an act that requires force or strain and pain is experienced at the point of force or strain, the injury may be found to have been established. Pain is an excellent symptom of an injury.* Of course, the trier of fact will determine the credibility of the witness's testimony as to the total situation. We, therefore, find substantial competent evidence in the record to support the conclusion of the Workmen's Compensation Board of Appeals, that the above facts establish a causal connection between the work incident and appellant's injury. *Pages Department Store v. Velardi,* 464 Pa. 276, 346 A.2d 556 (1975).

483 Pa. at 423–24, 397 A.2d 415

So too in the instant case, appellant's own testimony regarding the incident at work on August 30, 1979 and his immediately subsequent medical history is substantial competent evidence which supports the referee's conclusion that he had suffered a work-related injury even in the absence of medical testimony.

Moreover, contrary to the majority I believe the deposition offered on behalf of appellant also supports the referee's conclusion. In this regard, I find Judge Barbieri's dissenting opinion in this case persuasive. That opinion states:

I must dissent because it is clear to me that the testimony of the only medical witness in the case, read as a whole, contains opinion statements that are sufficiently positive to support the referee's finding that a medical or causal relationship exists between the aggravating injury and the disc conditions, and that, therefore, the Workmen's Compensation Appeal Board erred in reversing the referee's award. Accordingly, I would reverse and reinstate the referee's decision.

While it is true that some statements in the testimony of Dr. Narayan T. Nayak, standing alone, may be insufficient to support a finding of causal relationship, I believe that the following testimony contains opinion assertions that are sufficiently positive to support such a finding:

[testimony omitted].

As I read the above, giving to the words the interpretation that will best support the referee's findings, as I must, it amounts to this: that the claimant's injury was "due to an acute trauma," significant if not itself sufficient, *Morgan v. Giant Markets, Inc.*, 483 Pa. 421, 397 A.2d 415 (1979); that the relationship is so compellingly obvious that "I *have* to believe ...," if the claimant's testimony is accepted, which it was, "that his condition was severely aggravated" following the injury at work; that the doctor is "without doubt" that the herniated disc came "from that particular incident," although prefaced by the word "assume;" that "*this* is, again, an aggravation at the time of the injury;" and "that the episode of August 30 was an aggravation of a preexisting condition," which, although in the context of a leading but unobjected to question, was answered in a clear affirmative, establishing that the episode on August 30, 1979 "was responsible for this herniation of the disc."

My research indicates that this Court, the Superior Court and the Supreme Court have never required more,

372

*but have often approved less.* (numerous citations omitted).

472 A.2d 1178–79.

Based upon the foregoing, I would reverse the order of the Commonwealth Court and reinstate the referee's award of benefits.