CITY OF PHILADELPHIA, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (SEAMAN), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 16, 2010.
Decided Nov. 5, 2010.

Jeffrey L. Zeitz, Philadelphia, for petitioner.

Michael G. Dryden, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

The City of Philadelphia (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that granted the claim petition of Joseph Seaman (Claimant). In doing so, the Board affirmed the decision of a Workers' Compensation Judge (WCJ) that Claimant had sustained a work-related binaural hearing loss. Employer asserts that the testimony of Claimant's medical expert was equivocal, causing a capricious disregard of Employer's medical evidence. Discerning no merit to this argument, we affirm.

On July 8, 2006, Claimant retired after having worked as a City firefighter for 40 years.[1] On September 17, 2007, he filed a claim petition, alleging that he had sus-

---

1. During his 40 years of service, Claimant was a firefighter, lieutenant, and later a cap-

tain. Reproduced Record at 9a (R.R. ___).

tained binaural hearing loss as a result of many years of exposure to hazardous noise at work. Employer filed an answer denying liability, and a hearing was conducted by a WCJ.

At the hearing, Claimant testified that his work as a firefighter in Philadelphia had exposed him to loud noise on a daily basis. He explained that the daily equipment check exposed him to the noise of engines, generators, public address and radio systems. Responding to an emergency call involved the ringing of bells at the fire station, followed by the sirens of the truck and the use of an air horn to clear traffic. Fighting fires exposed Claimant to alarm systems, smoke detectors, saws, radios, explosions, and building collapses. In the 1990's, Employer provided Claimant with ear plugs, but Claimant elected not to wear them, explaining that they were ineffective and impeded his ability to hear well enough to perform his job. In retirement, Claimant is no longer exposed to loud noises. Claimant testified that he never served in the military; only rode a motorcycle for one year in the 1970's; and does not shoot guns. There is no family history of hearing loss.

Claimant testified that his hearing problem manifested itself gradually. Eventually it became difficult for him to hear in crowded environments; to listen to the television without turning up the volume very loud; or to engage in conversations. On May 15, 2007, he attended a hearing test session at his union hall, where he was tested by Ronda Schuman. The test revealed a 53.1 percent hearing impairment, and Schuman referred Claimant to Jeffrey Cooper, M.D., an otolaryngologist.

Dr. Cooper testified about his June 21, 2007, audiological examination of Claimant. It showed Claimant to suffer a binaural hearing impairment of 47.5 percent, which Dr. Cooper found to be sensorineural, a type of hearing loss caused by exposure of the inner ear to noise. Dr. Cooper opined that Claimant's sensorineural hearing loss was directly related to his employment as a firefighter, noting that Claimant's hearing loss was "extremely atypical" for someone of Claimant's age. R.R. 61a.

In response, Employer presented the deposition testimony of Allen Miller, M.D.,[2] who did an independent medical examination (IME) of Claimant on April 17, 2008. Dr. Miller found a significant bilateral sensorineural hearing loss of 62.1 percent, but he concluded that it was not caused by occupational noise exposure. Dr. Miller testified that neither Dr. Cooper's nor Schuman's audiogram showed any notching at 4,000 cycles, and noise-induced hearing loss is shown by this notching. Dr. Miller opined that Claimant's hearing loss could have resulted from a variety of non-work-related causes, including vascular problems, an ototoxic condition, or Meniere's disease.

The WCJ found Dr. Cooper's opinion to be credible and consistent with Claimant's uncontradicted testimony regarding his exposure to noise. The WCJ rejected Dr. Miller's testimony as inconsistent with the weight of the evidence. As a result, the WCJ held that Claimant proved he sustained a compensable, permanent binaural hearing loss of 47.5 percent and awarded Claimant 123.5 weeks of compensation benefits.

2. Employer also presented the deposition testimony of John Barry and Colin Brigham, who conducted noise exposure studies at Philadelphia fire departments. The WCJ noted that the studies did not provide a basis for determining Claimant's level of exposure and found them credible only where consistent with Claimant's testimony. Employer does not refer to these studies in its appeal to this Court.

Employer appealed to the Board. Employer argued that Claimant did not prove that his hearing loss was work-related and that the WCJ erred in disregarding the testimony of Employer's medical witness. The Board affirmed the WCJ, and Employer now petitions for this Court's review.

On appeal,[3] Employer raises two issues for our review. First, Employer asserts that the Board erred because Dr. Cooper's opinion was equivocal and not supported by evidence showing that Claimant had a compensable hearing loss at the time of his retirement. Second, Employer asserts that because Dr. Cooper's opinion was equivocal, it follows that the Board capriciously disregarded the competent testimony of Employer's medical expert, Dr. Miller.

The requirements for establishing a right to benefits for a work-related hearing loss are set forth in Section 306(c)(8) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(8). The Act requires the claim to be "filed within three years after the date of last exposure to hazardous occupational noise in the employ of the employer against whom benefits are sought." Section 306(c)(8)(viii) of the Act, 77 P.S. § 513(8)(viii). The hearing loss must be established by an audiogram which "conform[s] to OSHA Occupational Noise Exposure Standards." Section 306(c)(8)(iv) of the Act, 77 P.S. § 513(8)(iv). The hearing loss must be "permanent" to be compensable. Section 306(c)(8)(i) of the Act, 77 P.S. § 513(8)(i). Finally, if the hearing "impairment as calculated under the Impairment Guides ... is equal to or less than ten per centum, no benefits shall be pay-

able." Section 306(c)(8)(iii) of the Act, 77 P.S. § 513(8)(iii). ‚ Case law has established that the Claimant must present medical evidence to meet his burden of proving that his permanent hearing loss of more than 10 percent was caused by exposure to occupational noise. *Hayduk v. Workers' Compensation Appeal Board (Bemis Co., Inc.)*, 906 A.2d 622, 631 (Pa. Cmwlth.2006).

▬ For a claimant's medical evidence to be competent, it cannot be equivocal. As the Supreme Court has explained:

> Where medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that *in his professional opinion the result in question did come from the assigned cause....* Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship.

*Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 508 Pa. 360, 365–366, 498 A.2d 800, 802 (1985) (emphasis added) (citations omitted). In determining whether medical testimony is equivocal, the entire testimony of the medical witness is considered. *Id.* at 366, 498 A.2d at 803.

▬ Dr. Cooper's report found that Claimant sustained a "bilateral sensorineural hearing loss of moderate to severe degree." R.R. 75a. The report then concluded that Claimant suffered a binaural hearing impairment of 47.5 percent. *Id.*

---

**3.** Our scope of review is limited to determining whether there has been a violation of constitutional rights, an error of law or whether necessary findings of fact are sup-

ported by substantial evidence of record. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle)*, 703 A.2d 558, 561 (Pa. Cmwlth.1997).

Based on his evaluation of Claimant, Dr. Cooper concluded:

> I am able to state within a reasonable degree of medical certainty, that the binaural sensorineural impairment evidenced is consistent with a longstanding history of noise exposure while employed by the Philadelphia Fire Department for forty years.

*Id.* At his deposition, Dr. Cooper mirrored this assessment by testifying that he felt "strongly that [Claimant's hearing loss was] directly related to the noise exposure over 40 years." R.R. 61a. Employer nevertheless claims that Dr. Cooper's conclusion was equivocal because "Dr. Cooper did not, and could not state, within a reasonable degree of medical certainty, the extent of Claimant's hearing loss at retirement." Petitioner's Brief, at 19. According to Employer, Claimant failed to provide "evidence to support his theory that an occupational hearing loss can manifest itself after the exposure had terminated almost 11 months earlier." *Id.* at 13.

Employer bases this argument upon this Court's holding in *Maguire v. Workers' Compensation Appeal Board (Chamberlain Manufacturing Co., Inc.),* 821 A.2d 178 (Pa.Cmwlth.2003). Employer argues that the holding in *Maguire* required Claimant to establish how his work-related hearing loss could develop almost a year after he retired and was no longer exposed to noise in the workplace. Claimant responds that Employer misapprehends *Maguire.*

In *Maguire,* the claimant had worked for thirty-four years as an artillery shell quality-control inspector before retiring on October 30, 1998. Prior to his retirement, his hearing had been tested on several occasions by his employer. The last examination occurred in July 1998, and showed a binaural hearing loss of four percent. The claimant filed a claim petition alleging a work-related hearing loss. At the hearing before the WCJ, he presented expert medical testimony that his hearing loss as of April 1999 was 15.625 percent. The employer presented expert medical testimony that the claimant's hearing loss was not work-related and that hearing loss due to noise exposure does not increase over time. Thus, if the claimant's hearing loss was caused by noise exposure, it should not have continued to worsen following his retirement. The WCJ rejected the claimant's theory that his hearing loss continued to increase following his retirement and credited the testimony of the employer's medical expert. On appeal, this Court affirmed, concluding that the WCJ's findings were supported by substantial evidence. In doing so, we explained that "we need not decide whether the Act requires, in every case, that a claimant show a hearing loss of [more than] 10% on or before the claimant's last day of work." *Id.* at 181. It appears that this question does need to be decided in this case.

*Maguire* involved a claimant whose pre-retirement hearing examination showed a hearing loss of four percent, which increased in six months to a loss of 15.625 percent. Because expert medical testimony established that hearing loss caused by noise exposure would not have increased following claimant's retirement, the claimant had to explain how the dramatic increase in his hearing loss from July 1998 to April 1999 could be work-related. His medical evidence did not provide this explanation and, thus, did not establish a causal relationship between his hearing loss and his exposure to noise in the workplace.

Section 306(c)(8) of the Act placed the burden on Claimant to prove a permanent hearing loss of more than 10 percent caused by exposure to noise in the workplace. Claimant met this burden.

Section 306(c)(8) does not require that a hearing loss of greater than 10 percent be measured on or before the claimant's last day of work. Indeed, claimants have three years after leaving work to seek compensation for a hearing loss, and this is the only deadline imposed on those seeking compensation for a work-related hearing loss.

*Maguire* does not otherwise direct. *Maguire* concerned a claimant whose hearing loss was determined before he retired. After he left the workplace, his hearing rapidly deteriorated. His medical evidence was not adequate because it did not explain the deterioration after the claimant's exposure to noise ended. That is not the case here.

Claimant testified that his hearing had deteriorated gradually over a course of years, but he did not have it tested until almost one year after he retired, at which point his hearing loss measured 47.5 percent. This is far in excess of 10 percent. Claimant's expert, Dr. Cooper, testified that Claimant's hearing loss was caused by his exposure to noise at work over the course of his 40 years of employment. This satisfied Claimant's burden under Section 306(c)(8) of the Act.

 Employer argues that Dr. Cooper's opinion was equivocal because he did not explain how Claimant's hearing loss could manifest itself so many months after retirement. Employer misses the point. Claimant did not assert that his hearing loss first manifested itself a year after he retired. Rather, Claimant did not have his hearing loss diagnosed until after he retired when, for the first time, he underwent an audiogram. Section 306(c)(8) does not require a claimant to produce evidence

that his hearing loss was greater than 10 percent at the time of retirement. Rather, it requires a claimant to show that he has permanent hearing loss greater than 10 percent; that the hearing loss is work-related; and that an application for compensation be filed within three years of retirement. Claimant satisfied these standards. Dr. Cooper's testimony clearly and unambiguously established the work-related cause of Claimant's hearing loss.[4]

For these reasons, the order of the Board is affirmed.

## ORDER

AND NOW, this 5th day of November, 2010, the order of the Workers' Compensation Appeal Board dated December 3, 2009, in the above-captioned matter is hereby AFFIRMED.

---

4. Because we reject Employer's claims that Dr. Cooper's testimony was equivocal and Claimant's evidence was thus insufficient, we need not address Employer's claim that the Board capriciously disregarded the testimony of Employer's medical expert.